**DICKINSON WRIGHT PLLC**
John L. Krieger (CA Bar No. 212325)
jkrieger@dickinson-wright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Tel: (702) 550-4400
Fax: (844) 670-6009

Nicholas S. Lee (*pro vice to be submitted)*
nslee@dickinson-wright.com
55 West Monroe, Suite 1200
Chicago, IL 60603
Tel: (312) 572-6914

*Attorneys for Plaintiff*
*RDB LA Group, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RDB LA Group, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>Sarkis Grigoryan, Number One Collision LLC, Number One Customs LLC, Marvin Cifuentes, and Eliseo Edemir Flores,<br><br>Defendants. | Case No.: 2:25-cv-1471<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff RDB LA Group, Inc. ("RDB") hereby brings this Complaint against Defendants Sarkis Grigoryan, Number One Collision LLC, Number One Customs LLC, Marvin Cifuentes, and Eliseo Edemir Flores and alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has subject matter jurisdiction over Counts I-V under 28 U.S.C. §1331, 28 U.S.C. §1338(a), and 15 U.S.C. §1121(a) as they arise under the Lanham Act.

2. The Count has subject matter jurisdiction under Count XII under 28 U.S.C. §1331 as it arises under the Federal Defend Trade Secrets Act.

3. The Court has subject matter jurisdiction over Counts VI-VIII under 28 U.S.C. §1338(b) as they assert claims of unfair competition joined with a substantial and related claim under the trademark laws.

4. The Court also has subject matter jurisdiction over Counts VI-IX, XI, XIII, and XIV under 28 U.S.C. §1367(a) pursuant to the Court's supplemental jurisdiction.

5. The Court has personal jurisdiction over Grigoryan because he is a resident of and domiciled in this District.

6. The Court has personal jurisdiction over Collision because it is incorporated in California and has a regular and established place of business in this District.

7. The Court has personal jurisdiction over Customs because it is incorporated in California and has a regular and established place of business in this District.

8. The Court has personal jurisdiction over Cifuentes because he is a resident of and domiciled in this District.

9. The Court has personal jurisdiction over Flores because he is a resident of and domiciled in this District.

10. Venue is proper in this District under 28 U.S.C. §1391(b)(1) as to Grigoryan as he resides in this District, and under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to RDB's claims against Grigoryan occurred in this District. Venue is also proper under 28 U.S.C. §1391(c) as to Grigoryan as the Court has personal jurisdiction over Grigoryan.

11. Venue is proper in this District under 28 U.S.C. §1391(b) as to Collision at it resides in this District, and under 28 U.S.C. §1391(b)(2) because a

substantial part of the events or omissions giving rise to RDB's claims against Collision occurred in this District. Venue is also proper under 28 U.S.C. §1391(c) as to Collision as the Court has personal jurisdiction over Collision.

12. Venue is proper in this District under 28 U.S.C. §1391(b) as to Customs at it resides in this District, and under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to RDB's claims against Customs occurred in this District. Venue is also proper under 28 U.S.C. §1391(c) as to Customs as the Court has personal jurisdiction over Customs.

13. Venue is proper in this District under 28 U.S.C. §1391(b)(1) as to Cifuentes as he resides in this District, and under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to RDB's claims against Cifuentes occurred in this District. Venue is also proper under 28 U.S.C. §1391(c) as to Cifuentes as the Court has personal jurisdiction over Cifuentes.

14. Venue is proper in this District under 28 U.S.C. §1391(b)(1) as to Flores as he resides in this District, and under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to RDB's claims against Flores occurred in this District. Venue is also proper under 28 U.S.C. §1391(c) as to Flores as the Court has personal jurisdiction over Flores.

## THE PARTIES

15. Plaintiff RDB is a California corporation with its principal place of business at 5639 West Sunset Boulevard, Hollywood, California 90028.

16. Defendant Grigoryan is an individual residing and domiciled at 1232 Orange Grove Avenue, Apt. 201, Glendale, California 91205.

17. Defendant Collision is a California limited liability company with its principal address at 8426 San Fernando Road, Sun Valley, California 91352.

18. Defendant Customs is a California limited liability company with its principal address at 3079 Cahuenga Boulevard West, Los Angeles, California

90068.

19. Defendant Cifuentes is an individual residing and domiciled at 418 South Normandie Avenue, Apt. 116 Los Angeles, California 90020.

20. Defendant Flores is an individual residing and domiciled at 7400 Valley Boulevard, SPC 86, Fontana, California 92335.

## GENERAL ALLEGATIONS OF FACTS

21. RDB is in the business of automotive maintenance and repair. RDB began as a family-owned business in 2011 and remains so until this day.

22. RDB has grown to a global brand and has provided a myriad of automotive services to thousands of vehicles over the years. RDB has also built a tremendous social media presence with over one million followers on Instagram and over 700,000 subscribers on YouTube. RDB has established a solid online reputation with customers and others, including highly favorable Yelp reviews from clients all over the country.

23. Grigoryan was hired as an employee of RDB in December 2018.

24. Grigoryan stated on his resume that he had experience as a body shop manager.

25. After contacting Grigoryan's previous employer, RDB found that this was not true, and that Grigoryan had fabricated that experience. The previous employer indicated that Grigoryan was a mediocre employee, and was merely an assistant to the manager.

26. Grigoryan was a toxic employee. He was a poor worker taking twenty-minute hourly cigarette breaks. Grigoryan was also caught in daily lies about parts ordering, with regard to communications with customers and insurance adjusters, and other many other matters.

27. In time, RDB discovered a pattern of lost sales and customers due to Grigoryan's conduct. For example, investigation revealed that Grigoryan would be

extremely rude to customers during telephone calls or simply hang up the phone on them while attending to personal business on his cell phone or computer.

28. As a further example, investigation also revealed that on company time, Grigoryan obsessively visited online dating apps, particularly targeting foreign women. Grigoryan would promise that he would procure green cards for them, and afterward would invent reasons to end the relationship.

29. As an additional example, Grigoryan improperly handled several insurance cases requiring RDB to defend itself in a proceeding with the California Bureau of Automotive Repair. He has also unprofessionally engaged with insurance adjusters thereby sullying RDB's relationship with insurance companies.

30. While employed by RDB, Grigoryan also intentionally damaged vehicles and vehicle parts resulting in losses to RDB.

31. While employed by RDB, Grigoryan also engaged in acts of violence directed to employees of RDB and to others.

32. While employed by RDB, Grigoryan intentionally disrupted RDB's relationships with other RDB employees. Grigoryan manipulated employees into requesting raises and additional vacation time. Grigoryan also attempted to orchestrate employee revolts against RDB.

33. While employed by RDB, Grigoryan also made false and defamatory statements concerning RDB to RDB's customers and potential customers in an attempt to dissuade them from doing business with RDB.

34. On or about May 3, 2024, Grigoryan's employment with RDB ended.

35. On that date, Grigoryan informed RDB that he was going on vacation to Armenia for two weeks. RDB attempted to explain to Grigoryan that it was not an appropriate time for a vacation, but he left anyway.

36. RDB requested that Grigoryan at least find someone to cover his role while he was gone but he did not do so.

37. As a result, RDS was required to hire a temporary employee, who was provided access to Grigoryan's company email so that the temporary employee could handle insurance requests and other matters.

38. While on vacation, Grigoryan sent texts to RDB demanding that he be permitted use of his company email. RDB informed Grigoryan that the parties would talk upon his return (Exhibit A).

39. In response, Grigoryan threatened RDB with taunts to the effect that this was RDB's last chance: "I am done think before you answer, Good luck I did gave you chance to correct ur mistake, Dont even call me I am done with you, I will play the same game with you" (Exhibit A).

40. Attempts to terminate Grigoryan employment at RDB were met with threats of violence and blackmail by Grigoryan, including threats against the families of RDB's principals.

41. RDB did not hear from Grigoryan again until on or about October 23, 2024, when RDB received a threatening letter from an attorney representing Grigoryan (Exhibit B).

42. Before leaving, Grigoryan took proprietary documents from RDB, including emails, repair estimates and insurance documents relating to work performed for RDB clients. In addition, Grigoryan has RDB customer contact and other information stored in his phone. On information and belief, Grigoryan has also taken proprietary photos and videos.

43. After Grigoryan left and while working for Customs and Collision, he has continued to solicit RDB's customers. In so doing, Grigoryan has contacted RDB customers he gained knowledge of through his employment at RDB, and has made false and defamatory statements regarding RDB, its business and products, to such customers in an attempt to steer such customers away from RDB. For example, Grigoryan has stated on his Instagram account, in response to inquiries, that the truth

about RDB will be revealed. Additionally, upon information and belief, Grigoryan has made further false and defamatory statements regarding RDB in emails and other communications. Furthermore, his Instagram account continued to reference RDB, creating the false impression that he remains associated with the company despite no longer having any affiliation.

44. Grigoryan has also solicited two former long-time employees of RDB, including Cifuentes and Flores, and made false and defamatory statements to them regarding RDB and its business to persuade them to work at Grigoryan's new employer, namely Customs and Collision. In exit interviews conducted after RDB learned Cifuentes and Flores were leaving, Flores stated that he was taking a warehouse job closer to his home. Cifuentes would not divulge his reason for leaving. Both rejected offers to remain employed at RDB despite offers of higher pay.

45. Grigoryan and the other Defendants then engaged in a scheme to file fraudulent and false workers compensation claims against RDB (Exhibit C). Defendants Cifuentes and Flores were not injured while employed at RDB, and left RDB to join Defendants Collision and/or Customs and performed the same work functions as they had at RDB. Cifuentes' and Flores' claims against RDB were quickly dismissed.

46. RDB owns U.S. Trademark Registration No. 6,083,907 (the '907 Registration, Exhibit D) for RDB® for automobile body repair and finishing for others; automobile cleaning; automobile customization services; automobile detailing; automobile detailing services featuring waiting lounge facilities for customer relaxation; automobile greasing; automobile lubrication; automobile painting; automobile pinstriping; automobile polishing; automobile reconditioning services; automobile repair and maintenance; automobile undercoating services; automobile upfitting services; custom rebuilding of existing land vehicles and

structural parts therefor; automotive upgrade services, namely, supercharging, turbocharging and performance upgrades of automobiles; custom installation of automobile interiors; maintenance and/or repair of automobiles; rebuilding of automobile engines; repair of automobiles; repair of automobiles, namely, auto collision repair, painting, mechanical repair, repair of suspension, repair of wheels and tires, application of vehicle wraps; repair of rubber tires; repair or maintenance of automobiles; retreading of tires.

47. The '907 Registration is valid and subsisting.

48. RDB owns U.S. Trademark Registration No. 6,083,910 (the '910 Registration, Exhibit E) for ® for automobile body repair and finishing for others; automobile cleaning; automobile customization services; automobile detailing; automobile detailing services featuring waiting lounge facilities for customer relaxation; automobile greasing; automobile lubrication; automobile painting; automobile pinstriping; automobile polishing; automobile reconditioning services; automobile repair and maintenance; automobile undercoating services; automobile upfitting services; custom rebuilding of existing land vehicles and structural parts therefor; automotive upgrade services, namely, supercharging, turbocharging and performance upgrades of automobiles; custom installation of automobile interiors; maintenance and/or repair of automobiles; rebuilding of automobile engines; repair of automobiles; repair of automobiles, namely, auto collision repair, painting, mechanical repair, repair of suspension, repair of wheels and tires, application of vehicle wraps; repair of rubber tires; repair or maintenance of automobiles; retreading of tires.

49. The '910 Registration is valid and subsisting.

50. RDB has used the RDB® mark since at least December 1, 2010 in connection with automotive repair and maintenance services.

51. RDB has used the ® mark since at least December 1, 2010 in

connection with automotive repair and maintenance services.

52. RDB is the owner of several social media accounts, including the Instagram account RDB-Sarkis.

53. Defendants have blocked RDB from using its RDB-Sarkis Instagram account, and have communicated with others making false and defamatory statements regarding RDB and its products and business using that Instagram account.

54. Though no longer employed by RDB, Grigoryan and the other Defendants have continued to use RDB's social media account and RDB's registered trademarks RDB® and RDB ® .

55. Grigoryan, though no longer employed by RDB, has used and continues to use the RDB® and RDB® marks in connection with automotive repair and maintenance services, and to represent himself as employed by RDB, attempts to solicit RDB customers.

56. Collision and Customs are aware of Grigoyan's actions and has ratified and encouraged such actions.

57. The lost business due to Defendants' actions has totaled in the millions.

**<u>COUNT I</u>**
**<u>(INFRINGEMENT OF REGISTERED RDB® MARK UNDER 15 U.S.C. §1114)</u>**

58. By the unauthorized use of RDB's registered RDB® mark, Defendants have infringed and continue to infringe RDB's federally registered trademark rights.

59. Defendants' use of RDB's registered RDB® mark is likely to cause confusion among consumers who are looking for genuine RDB products and services sold under the mark.

60. As a result of its unauthorized use of RDB's registered RDB® mark, Defendants are likely to cause confusion or to cause mistake or to deceive the public

in violation of the Lanham Act, 15 U.S.C. § 1114.

61. Defendants are likely to have misled and to continue to mislead current and prospective consumers as to an affiliation, connection, or association between Defendants or their products and services and RDB or its products and services, or as to the origin, sponsorship, or approval by RDB of Defendants or their products and services in violation of the Lanham Act, 15 U.S.C. § 1114.

62. Defendants' acts were and are undertaken willfully and in bad faith and in conscious disregard of RDB's trademark rights, with an intention to mislead the public into believing that there is a connection between it and RDB.

63. Defendants are trading on the goodwill symbolized by RDB's registered RDB® mark and, by reason of Defendants' acts, RDB has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

64. Defendants' use of RDB's registered RDB® mark has caused and continues to cause harm to RDB's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to RDB's market share and trademark rights.

65. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants' use of RDB's registered RDB® mark, and variations thereof, is enjoined by this Court.

66. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill, erode its market share, and cause confusion in the marketplace.

/ / /

/ / /

/ / /

**COUNT II**
**(INFRINGEMENT OF REGISTERED**
**RDB® MARK UNDER 15 U.S.C. §1114)**

67. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-66 as if restated herein in their entirety.

68. By the unauthorized use of RDB's registered RDB® mark, Defendants have infringed and continue to infringe RDB's federally registered trademark rights.

69. Defendants' use of RDB's registered RDB® mark is likely to cause confusion among consumers who are looking for genuine RDB products and services sold under the mark.

70. As a result of its unauthorized use of RDB's registered RDB® mark, Defendants are likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1114.

71. Defendants are likely to have misled and to continue to mislead current and prospective consumers as to an affiliation, connection, or association between Defendants or their products and services and RDB or its products and services, or as to the origin, sponsorship, or approval by RDB of Defendants or their products and services in violation of the Lanham Act, 15 U.S.C. § 1114.

72. Defendants' acts were and are undertaken willfully and in bad faith and in conscious disregard of RDB's trademark rights, with an intention to mislead the public into believing that there is a connection between it and RDB.

73. Defendants are trading on the goodwill symbolized by RDB's registered RDB® mark and, by reason of Defendants' acts, RDB has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

74. Defendants' use of RDB's registered RDB® mark has caused and

continues to cause harm to RDB's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to RDB's market share and trademark rights.

75. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants' use of RDB's registered ® mark, and variations thereof, is enjoined by this Court.

76. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill, erode its market share, and cause confusion in the marketplace.

**COUNT III**
**(FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a))**

77. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-76 as if restated herein in their entirety.

78. Defendants' actions have violated the Lanham Act, § 1125(a) because they constitute a word, term, symbol, and a false designation of origin, and false or misleading description or representation of fact that are likely to cause confusion among consumers who are looking for a genuine product or service sold by RDB under RDB's registered RDB® and ® marks.

79. As a result of its actions, Defendants are likely to cause confusion or to cause mistake or to deceive the public in violation of the Lanham Act, 15 U.S.C. § 1125(a).

80. Defendants' actions are likely to have misled and to continue to mislead prospective consumers as to an affiliation, connection, or association between Defendants or their products and services and RDB or its products and services, or as to the origin, sponsorship, or approval by RDB of Defendants or their products

and services in violation of the Lanham Act, 15 U.S.C. § 1125(a).

81. Defendants' acts were and are undertaken willfully and in bad faith and in conscious disregard of RDB's rights, with an intention to mislead the public into believing that there is a connection between it and RDB.

82. Defendants are trading on the goodwill symbolized by RDB's registered RDB® and ® marks and, by reason of Defendants' acts, RDB has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill and will sustain a loss of revenue and profits.

83. Defendants' use of RDB's registered RDB® and ® marks has caused and continues to cause harm to RDB's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to RDB's market share and trademark rights.

84. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants' use of RDB's registered RDB® and ® marks, and variations thereof, is enjoined by this Court.

85. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill, erode its market share, and cause confusion in the marketplace.

**COUNT IV**
**(PRODUCT DISPARAGEMENT**
**15 U.S.C. § 1125(a)(1)(B))**

86. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-85 as if restated herein in their entirety.

87. Defendants made material misrepresentations or misdescriptions of fact about the nature or character of RDB and/or RDB's products.

88. Defendants used false or misleading statements in commerce.

89. Defendants made the representations in the context of commercial advertising or promotion.

90. Defendants' conduct as described above, has been willful, wanton, reckless, and in total disregard for RDB's rights.

91. Defendants' actions caused and continues to cause harm to RDB's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to RDB's market share.

92. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants ' conduct is enjoined by this Court.

93. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill, erode its market share, and cause confusion in the marketplace.

**<u>COUNT V</u>**
**<u>(COMMON LAW TRADEMARK INFRINGEMENT)</u>**

94. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-93 as if restated herein in their entirety.

95. Defendants' use of RDB's registered RDB® and RDB® marks and variations thereof, as described and alleged herein, is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants with RDB as to the origin, sponsorship, or approval of Defendants' products and services.

96. Defendants' acts are causing damage and other irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless Defendants' uses of RDB's registered RDB® and RDB® marks, and variations thereof, are enjoined by this Court.

97. Defendants' conduct as described herein has been willful, wanton,

reckless, and in total disregard for RDB's rights.

98. The acts of Defendants described above have caused unfair and unjust commercial injury to RDB.

99. Because of Defendants' actions, RDB has lost business and potential business as a result of that conduct and has incurred commercial and marketplace damages as a continuing result of same.

100. Defendants' actions constitute the common law tort of trademark infringement.

101. RDB is entitled to damages as a result of Defendants' infringement.

**COUNT VI**
**(COMMON LAW UNFAIR COMPETITION)**

102. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-101 as if restated herein in their entirety.

103. Defendants' acts were and are undertaken willfully and in bad faith and in conscious disregard of RDB's rights, with an intention to mislead the public into believing that there is a connection between Defendants and RDB.

104. Defendants are trading on the goodwill symbolized by RDB's registered RDB® and ® marks and, by reason of Defendants' acts, RDB has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain a loss of revenue and profits.

105. Defendants' use of RDB's registered RDB® and ® marks has caused and continues to cause harm to RDB's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to RDB's market share and trademark rights.

106. Defendants made material misrepresentations or misdescriptions of fact about the nature or character of RDB and/or RDB's products.

107. Defendants made the representations in the context of commercial

advertising or promotion.

108. Defendants' conduct as described above, has been willful, wanton, reckless, and in total disregard for RDB's rights.

109. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants' use of RDB's registered RDB® and ® marks, and variations thereof, and false statements are enjoined by this Court.

110. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill, erode its market share, and cause confusion in the marketplace.

111. Defendants' actions constitute the common law tort of unfair competition.

112. RDB is entitled to damages as a result of Defendants' conduct.

**COUNT VII**
**(VIOLATION OF CAL. BUS. & PROF. CODE §17200, et seq.)**

113. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-112 as if restated herein in their entirety.

114. Defendants' acts were and are undertaken willfully and in bad faith and in conscious disregard of RDB's rights, with an intention to mislead the public into believing that there is a connection between Defendants and RDB.

115. Defendants are trading on the goodwill symbolized by RDB's registered RDB® and ® marks and, by reason of Defendants' acts, RDB has suffered and will continue to suffer damage and injury to its business, reputation, and goodwill, and will sustain a loss of revenue and profits.

116. Defendants' use of RDB's registered RDB® and ® marks has caused and continues to cause harm to RDB's goodwill and has created and continues to create a likelihood of confusion among consumers that causes harm to

RDB's market share and trademark rights.

117. Defendants made material misrepresentations or misdescriptions of fact about the nature or character of RDB and/or RDB's products.

118. Defendants made the representations in the context of commercial advertising or promotion.

119. Defendants' conduct as described above, has been willful, wanton, reckless, and in total disregard for RDB's rights.

120. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants' use of RDB's registered RDB® and RDB® marks, and variations thereof, and false statements are enjoined by this Court.

121. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill, erode its market share, and cause confusion in the marketplace.

122. Defendants' actions constitute the common law tort of unfair competition.

123. RDB is entitled to damages as a result of Defendants' conduct.

**COUNT VIII**
**(DEFAMATION UNDER CAL. CIV. CODE §44, et seq.)**

124. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-123 as if restated herein in their entirety.

125. Defendants made material false statements of fact about the nature or character of RDB and/or RDB's products to RDB's customers and potential customers.

126. Such persons have reasonably understood such false statements to refer to RDB, and to falsely mean that RDB and its products are not trustworthy.

127. Defendants' conduct as described above, has been willful, wanton, reckless, and in total disregard for RDB's rights and of the truth or falsity of such statements.

128. Defendants' actions caused and continues to cause harm to RDB's goodwill and reputation and RDB's market share.

129. Defendants' acts are causing irreparable injury to RDB, for which there is no adequate remedy at law, and will continue to do so unless and until Defendants' conduct is enjoined by this Court.

130. Unless temporarily and permanently enjoined by this Court, Defendants' acts will immediately and irreparably injure RDB's goodwill and reputation.

**COUNT IX**
**(INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)**

131. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-130 as if restated herein in their entirety.

132. RDB has relationships with its customers, suppliers, and others that result in economic benefit to RDB.

133. Defendants knew of such relationships.

134. Defendants have disparaged RDB and its products to RDB's customers and potential customers, suppliers, and others.

135. Customers, suppliers, and potential customers have indicated to RDB that they would either stop doing business with RDB or would not do business with RDB as a result of Defendants' actions.

136. Customers have ceased doing business with RDB as a result of Defendants' actions.

137. Defendants' actions were intentional and without justification.

138. RDB has been damaged by Defendants' intentional and unjustified interference with RDB's established and potential business relations.

**COUNT X**
**(TRADE SECRET MISAPPROPRIATION UNDER THE FEDERAL TRADE SECRETS ACT 18 U.S.C. §1836, *et seq.*)**

139. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-138 as if restated herein in their entirety.

140. Grigoryan has, for example, taken proprietary customer information of RDB stored in his phone and his work computer. Grigoryan's computer containing RDB confidential information was password protected such that only Grigoryan was to have access to information stored therein. Grigoryan was not permitted to use customer information except for work-related matters, and was not permitted to contact customers outside of business hours. Mr. Grigoryan's RDB email access was protected by a password that RDB regularly changed for security reasons.

141. RDB's customer and other proprietary information benefit and provide economic value to RDB from such information not being generally known. Such information is also not readily ascertainable through proper means by another person.

142. Defendants have through the disclosure and use of such information have obtained economic value.

143. Defendants knew that such information was obtained under circumstances giving rise to a duty to maintain the secrecy of the information or to limit the use of such information.

144. Defendants knew that such information was obtained by improper means.

145. RDB has been damaged by Defendants' disclosure of RDB's proprietary trade secret information.

**COUNT XI**
**(TRADE SECRET MISAPPROPRIATION UNDER CALIFORNIA TRADE SECRETS ACT CAL. CIV. CODE §3426, *et seq.*)**

146. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-145 as if restated herein in their entirety.

147. Grigoryan has taken proprietary customer information of RDB stored in his phone.

148. Grigoryan has, for example, taken proprietary customer information of RDB stored in his phone and his work computer. Grigoryan's computer containing RDB confidential information was password protected such that only Grigoryan was to have access to information stored therein. Grigoryan was not permitted to use customer information except for work-related matters, and was not permitted to contact customers outside of business hours. Mr. Grigoryan's RDB email access was protected by a password that RDB regularly changed for security reasons.

149. RDB's customer and other proprietary information benefit and provide economic value to RDB from such information not being generally known. Such information is also not readily ascertainable through proper means by another person.

150. Defendants have through the disclosure and use of such information have obtained economic value.

151. Defendants knew that such information was obtained under circumstances giving rise to a duty to maintain the secrecy of the information or to limit the use of such information.

152. Defendants knew that such information was obtained by improper

means.

153. RDB has been damaged by Defendants' disclosure of RDB's proprietary trade secret information.

**COUNT XII**
**(CIVIL CONSPIRACY)**

154. RDB realleges and incorporates each of the allegations set forth in paragraphs 1-153 as if restated herein in their entirety.

155. Defendants have engaged in a conspiracy to intentionally interfere with RDB's contractual and existing and potential customer relationships.

156. Defendants were aware that each of them planned to engage in such wrongful interference.

157. Defendant agreed with each other and intentionally engaged in such wrongful interference.

158. RDB has been damaged by Defendants' conspiracy.

**REQUEST FOR RELIEF**

**WHEREFORE**, as to all of RDB Claims, RDB respectfully prays that this Court enter judgment in RDB's favor and against Defendants, and each of them, for relief as follows:

1. That Defendants infringed the registered RDB® mark in violation of 15 U.S.C. §1114;

2. That Defendants infringed the registered RDB® mark in violation of 15 U.S.C. §1114;

3. That Defendants have engaged in false description of origin and unfair competition in violation of 15 U.S.C. §1125(a);

4. That Defendants have disparaged RDB and its products in violation of 15 U.S.C. §1125(a)(1)(B);

5. That Defendants have violated Cal. Bus. & Prof. Code §17200, *et seq.*;

6. That Defendants have engaged in common law trademark infringement;

7. That Defendants have engaged in common law unfair competition;

8. That defendants have defamed RDB;

9. That Defendants have intentionally and unjustifiably interfered with RDB's business relationships and prospective relationships;

10. That Defendants have misappropriated RDB trade secrets in violation of the Federal Defend Trade Secrets Act;

11. That Defendants have misappropriated RDB trade secrets in violation California Uniform Trade Secrets Act;

12. That Defendants have engaged in a civil conspiracy;

13. Permanently enjoining and restraining Defendants from using or otherwise infringing the mark RDB® or any confusingly similar mark;

14. Permanently enjoining and restraining Defendants from using or otherwise infringing the mark RDB® or any confusingly similar mark;

15. Permanently enjoining and restraining Defendants from engaging in unfair competition;

16. Permanently enjoining and restraining Defendants from accessing or attempting to block RDB from accessing the RDB-Sarkis Instagram account or any of RDB's social media accounts;

17. Requiring Defendants to transfer control of the RDB-Sarkis Instagram account or any of RDB's social media accounts to RDB;

18. Permanently enjoining and restraining Defendants from making false and defamatory statements concerning RDB and its business;

19. Requiring Defendants to retract and remedy their false and defamatory statements concerning RDB and its business;

20. Permanently enjoining and restraining Defendants from interfering

with RDB's business relations;

21. Permanently enjoining and restraining Defendants from using or otherwise misappropriating RDB's trade secrets;

22. Requiring Defendants to return to RDB any and all of RDB's trade secret information and materials;

23. An award to RDB of its damages and Defendants' profits for their violations of the Lanham Act, Cal. Bus. & Prof. Code §17200 *et seq*., and the common law of unfair competition and trademark infringement;

24. An award to RDB or its damages for Defendants' false and defamatory statements;

25. An award to RDB of its damages for Defendants' intentional interference RDB's business relationships and prospective relationships.

26. An award of damages to RDB for Defendants' misappropriation of RDB trade secrets

27. An order declaring that this is an exceptional case, awarding RDB its costs, expenses, disbursements and reasonable attorney fees under 15 U.S.C. § 1117(a) and all other applicable statutes, rules and common law;

28. An order awarding RDB's punitive damages for Defendants' tortious conduct.

29. Such other and further relief as the Court deems just and proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 28, RDB hereby demands a trial by jury on all issues for which a trial by jury may be held.

DATED: February 20, 2025

Respectfully Submitted,

**DICKINSON WRIGHT PLLC**

/s/ *John L. Krieger*

John L. Krieger (CA Bar No. 212325)
jkrieger@dickinson-wright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, NV 89169
Tel: (702) 550-4400
Fax: (844) 670-6009

Nicholas S. Lee (*pro vice to be submitted)*
nslee@dickinson-wright.com
55 West Monroe, Suite 1200
Chicago, IL 60603
Tel: (312) 572-6914

*Attorneys for Plaintiff*
*RDB LA Group, Inc.*